# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LUIS SÁNCHEZ BETANCES & ANTILLANA, LLC,** <br> Plaintiffs <br> v. <br><br> **ASPEN AMERICAN INSURANCE CO. & OSVALDO CARLO LINARES**, <br> Defendants. | Civil No. 18-1437 (ADC/BJM) |

## REPORT AND RECOMMENDATION

Luis Sánchez Betances ("Sánchez") and Antillana, LLC, filed suit against Aspen American Insurance Company ("Aspen") and Osvaldo Carlo Linares ("Carlo") for negligence after Plaintiffs' boat allided with Sánchez's during Hurricane María. Dkt. 1 ("Compl."). Sánchez brings his claims for negligence under federal admiralty, or maritime, law and cost of repair, loss of enjoyment, and loss of market value or depreciation pursuant to Article 1802 of the Puerto Rico Civil Code respectively. 31 L.P.R.A. § 5141. Carlo and Aspen (collectively "Defendants") moved to dismiss the claims brought under Puerto Rico law. Dkt. 8. Plaintiffs opposed. Dkt. 11. Defendants responded. Dkt. 18. This case was referred to me for report and recommendation. Dkt. 20. For the reasons that follow, I recommend that the motion to partially dismiss be **GRANTED.**

## BACKGROUND

The following background includes facts drawn from the Complaint relevant to the motion at hand. When the court weighs a motion to dismiss for failure to state a claim, it regards the facts in the light most favorable to the plaintiff, so the following facts are accepted as true for the purposes of this motion.

Sánchez is the sole owner and shareholder of Antillana, LLC. Compl. ¶ 2. Plaintiffs own the Antillana[1], a fifty-foot, fiberglass motor vessel. Compl. ¶¶ 8, 10. Carlo owns the

---

[1] Defendants deny this allegation and allege Antillana, LLC, is the sole owner of the Antillana. Dkt. 9 ¶ 10.

Sánchez-Betances v. Aspen Am. Ins. Co., No. 18-1437 (ADC/BJM)                                                                2

Linska, a forty-foot, fiberglass, motor vessel. Compl. ¶¶ 9, 11. Aspen insured Carlo and the Linska with "yacht coverage" between August 1, 2017 and August 1, 2018. Compl. ¶ 12; Dkt. 9 ¶ 12 ("Answer"). The Antillana was docked at Puerto del Rey Marina ("PDR") in Fajardo, Puerto Rico, with the Linska docked to its starboard side during the time pertinent to this case. Compl. ¶¶ 13–14. Carlo is a PDR client. Compl. ¶ 15.

Puerto Rico is a Caribbean island and experiences hurricane season every year between June 1 and November 30. Compl. ¶¶ 16–17. On August 17, [2017], PDR sent its clients an email reminding them to take appropriate precautions in the event of a tropical storm or hurricane, including properly securing their vessels to the docks. Compl. ¶ 18. In mid-September, the tropical depression that would become Hurricane María formed in the Atlantic Ocean, and the National Hurricane Center ("NHC") began to issue advisory updates. Compl. ¶ 19. In total, the NHC would issue more than eighteen advisory warnings and updates regarding Hurricane María. Compl. ¶¶ 19–47. The updates included the geographical location, maximum sustained wind speed, present movement, and minimum central pressure. Compl. ¶ 20. The depression became Tropical Storm María on September 16 and continued on its westward path toward Puerto Rico. Compl. ¶ 21. On September 17, PDR emailed its clients regarding the storm's new designation and suggesting owners secure their boats. The email warned that leaving a vessel in the marina without appropriate preparation for the storm could result in liability to the vessel's owner. Compl. ¶ 24. The storm became Hurricane María later the same day.

On Monday, September 18, 2017, PDR emailed its clients again. Compl. ¶ 29. PDR explained that the NHC declared María a Category 2 hurricane and issued a hurricane watch for Puerto Rico, and PDR activated its "emergency protocol." *Id.* PDR reiterated its previous warning to secure vessels appropriately, reminded clients that leaving the vessel in the marina was not appropriate, and stated PDR was not responsible for securing clients' vessels. *Id.* Later that day, NHC issued an advisory warning for Puerto Rico, announcing its designation of María as a Category 4 hurricane. Compl. ¶¶ 30–31. PDR sent a second

email to clients, informing them that PDR would be closed on September 19, 2017 at noon and only clients or designated representatives could enter at their own risk. Compl. ¶ 32. PDR reiterated its previous warnings about taking appropriate steps to secure vessels and the potential for liability to vessels' owners. *Id.* About an hour later, the NHC designated Hurricane María as Category 5. Compl. ¶ 33. The NHC issued a number of advisory warnings on September 19, 2017. Each alert fell along the same lines, warning that Hurricane María was potentially catastrophic, urging the completion of preparations for the storm, and noting the threat to life and property. Compl. ¶¶ 34–39. Hurricane María reached Puerto Rico by the early morning hours of September 20, 2017. Compl. ¶ 40. Around 6:00 a.m., the NHC measured a wind gust of 99 m.p.h. at PDR. Compl. ¶ 42. In Fajardo, the maximum wind gust would be 100 m.p.h. and the maximum storm surge, or feet above mean sea level, was 3.7 feet. Compl. ¶¶ 45–46.

Sánchez secured the Antillana by September 18, 2017 in preparation for Hurricane María. Compl. ¶ 52. He separated its stern from the dock, anchored the vessel with a chain tied to the dock on its port-side, and placed defenses on the port and starboard sides of the vessel. Compl. ¶ 53. Sánchez used multiple lines to tie the vessel to the dock and secure the bow, in addition to taping shut hatches and removing outer curtains and coverings. *Id.* During the Hurricane, none of the lines securing the Antillana to the dock broke. Compl. ¶ 55. Plaintiffs allege that the Linska was not prepared for the storm and only a few single lines tying it to the dock were inadequate and broke in the storm. Compl. ¶¶ 61–62. The Antillana, however, remained in place and was hit repeatedly on its starboard side by the Linska. Compl. ¶ 57. The impacts damaged the Antillana's starboard side and propelled the Antillana's port-side into the dock, which caused further damage. Compl. ¶ 58.

Plaintiffs claim they spent $64,711.06 to repair material damage to the Antillana. Compl. ¶ 59. Plaintiffs paid an additional $492.40 for inspection of its hulls, $379.08 for the outhaul for the inspection, and $550.57 for the preparation of the repair estimate as part of the instant claim. *Id.* Plaintiffs estimate the Antillana lost about $50,000 in market value

as a result of the damage and subsequent repairs. Compl. ¶ 78. The repairs were completed around July 10, 2018, until which point Plaintiffs could not use or enjoy the Antillana. *Id.* Plaintiffs value the loss of use and enjoyment at $30,000. *Id.*

## LEGAL BACKGROUND

To survive a Rule 12(b)(6) motion, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). A court must "accept well-pled factual allegations in the complaint as true and make all reasonable inferences in the plaintiff's favor." *Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 85 (1st Cir. 2008). While a complaint need not contain detailed factual allegations to survive dismissal, a plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citation omitted). The court also need not accept as true legal conclusions or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal alteration omitted); *Maldonado v. Fontanes*, 568 F.3d 263, 267 (1st Cir. 2009). The plaintiff must show more than the "sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown— that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

On a Rule 12(b)(6) motion, the court "can consider (a) implications from documents attached to or fairly incorporated into the [counter]complaint, (b) facts susceptible to judicial notice, and (c) concessions in [the complainant's] response to the motion to dismiss." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Arturet-Velez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005)) (internal quotations omitted); *Watterson v. Paige*, 987 F.2d 1, 3 (1st Cir. 1993).

As a threshold matter, the district court has original jurisdiction over Plaintiffs' claims. *See* 28 U.S.C. § 1333. "The district courts shall have original jurisdiction, exclusive

Sánchez-Betances v. Aspen Am. Ins. Co., No. 18-1437 (ADC/BJM) 5

of the courts of the States, of [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). The district court shall exercise supplemental jurisdiction over claims that are so related to other claims in its original jurisdiction that "they form part of the same case or controversy." 28 U.S.C. § 1367. Plaintiffs' Article 1802 claims arise from the same alleged negligence as the maritime tort, so supplemental jurisdiction is appropriate. Defendants argue that "maritime law specifically prohibits" Plaintiffs' Article 1802 tort claims, so the court should not exercise supplemental jurisdiction over them. Dkt. 18 at 4. It bears noting, however, that supplemental jurisdiction and choice of law are distinct concepts. Exercising supplemental jurisdiction over Puerto Rico law claims does not guarantee that Puerto Rico law will supersede admiralty law during adjudication.

The "savings to suitors" clause does enable states to exercise concurrent jurisdiction over maritime claims, though maritime law circumscribes state jurisdiction. *See* 28 U.S.C. § 1333(1). "[M]aritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *East River S.S. Corp. v. Transamerica Deleval, Inc.*, 476 U.S. 858, 865, 1986 AMC 2027, 2032 (1986). "It is well-accepted that where the basis of the underlying claim is a maritime tort, substantive federal admiralty law applies." *Santos-Rodríguez v. Viera-Torres*, No. 11-1602, 2015 WL 1138256, at *3 (D.P.R. Mar. 13, 2015); *see also East River*, 476 U.S. at 864. Where admiralty law is silent, state law may supplement it. *Santos-Rodríguez*, 2015 WL 1138256, at *3. Those circumstances, however, are rare and state remedies must still accord with federal maritime standards. *Peemoler Sultan v. Pleasure Craft Contender*, 139 F. Supp. 2d 230, 237 (D.P.R. 2001). Although admiralty law no longer requires "rigid national uniformity," states still may not modify or displace its essential features. *See Carey v. Bahama Cruise Lines*, 864 F.2d 201, 207 (1st Cir. 1988) (quoting *Maryland Casualty Co. v. Cushing*, 347 U.S. 409, 429 (1954) (Black, J. dissenting)).

Article 1802 holds liable "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity." 31 L.P.R.A. § 5141. Admiralty law holds liable the owner of a vessel for any claim, debt, or liability "arising from . . . any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner." 46 U.S.C. § 30505(b). The owner's liability "shall not exceed the value of the vessel and pending freight." 46 U.S.C. § 30505(a). Although maritime and Puerto Rican negligence law clearly share characteristics, the key here is whether damages available pursuant to Article 1802 conflict or accord with maritime tort damages.

## DISCUSSION

Plaintiffs bring a claim under admiralty law for negligence and seek the cost of the repair of the damages caused by the Linska and related expenses, plus costs and attorney's fees. Compl. ¶ 74. Plaintiffs bring additional claims under Article 1802 for loss of use or enjoyment and loss of market value or depreciation. Compl. ¶¶ 75, 78. Defendants move to dismiss the loss of enjoyment and loss of market value claims because neither cause of action is recognized under federal admiralty law. Dkt. 8 at 1–2. Plaintiffs concede that their claims for loss of the use of a pleasure boat and loss of market value are based not on maritime law but solely on Article 1802, but they urge the court to consider the state law claims as separate questions arising from the set of facts. Dkt. 11 at 4. Defendants contest Plaintiffs' claims solely on the grounds that the Article 1802 damage claims conflict with federal admiralty law. Defendants argue that admiralty law must be uniform, and preserving its uniformity takes precedence over conflicting state remedies. Dkt. 11 at 3, Dkt. 18 at 3.

Maritime law typically employs *restitutio in integrum* to calculate damages. *See City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 196 (1995) (calling

*restitutio in integrum* a "basic principle of admiralty law" and "the leading maxim applied by admiralty courts" to ascertain collision damages). The principle holds that the owner of the damaged ship is to be restored to the same position as if no collision occurred. "Restitution is the rule in all cases where repairs are practical, and compensation when the loss is total." *Alaska S.S. Co. v. Inland Nav. Co.*, 211 F. 840, 843 (9th Cir. 1914); *see also The Granite State*, 70 U.S. 310, 314 (1865) ("But when the injured vessel is not a total loss, and is capable of being repaired and restored to her original situation, the cost necessary to such repair cannot be said to be an incorrect rule of damages."); *Dominican Maritime, S.A. v. M/V Inagua Beach*, 572 F.2d 892, 893, 1978 AMC 1552 (1st Cir. 1978) (a damaged vessel's "owner is not entitled to recover depreciation in market value simply because prospective buyers may not bid as highly for a vessel that has been in collision").

*Restitutio in integrum* may not be a maritime statute, but continual treatment of it as a "basic principle" and "leading maxim" supports its application here. And "where maritime law specifically prohibits a cause of action, state law may not be used to circumvent maritime law." *Rodriguez-Fernandez v. Hoyos-Aliff*, No. 06-1301, 2008 WL 2026010, at *5 (D.P.R. Feb. 8, 2008) (granting summary judgment on 31 L.P.R.A. § 5141 claims because they arose from maritime injuries, so maritime law governed). Plaintiffs admittedly repaired the Antillana after she suffered damage, so there was not a total loss. Compl. 59. The First Circuit, applying maritime law, explicitly ruled that an owner whose boat is damaged is entitled to restitution. *Inagua Beach*, 572 F.2d at 893. "However, the owner is not entitled to recover depreciation in market value simply because prospective buyers may not bid as highly for a vessel that has been in collision or because there are minor cosmetic defects that distinguish the vessel from its condition before the accident occurred." *Id.* Where restitution returns the vessel to its pre-accident state, the First Circuit called an additional award for loss of market value "unjustified." *Id.* Maritime law consequently mandates restitution rather than compensation or a payment for supposedly reduced market value.

Sánchez-Betances v. Aspen Am. Ins. Co., No. 18-1437 (ADC/BJM)                                                                                                8

Even in the absence of an explicit conflict between Plaintiffs' claimed loss of market value and maritime principles, Plaintiffs still failed to state a claim which would entitle them to relief for loss of market value because the Complaint entirely omitted factual support for their $50,000.00 of damages. Plaintiffs did not allege industry standards which devalue repaired vessels, nor did they allege facts supporting that the Antillana is worth less after repairs than she would have been had the damage never occurred. *See generally* Compl. Therefore, Defendants' motion to dismiss Plaintiffs' claim under Article 1802 for the Antillana's alleged loss of market value should be granted.

Maritime law permits recovery for loss of use when a vessel is damaged but restricts recovery to lost profits; in other words, loss of pleasure use is not recoverable. Plaintiffs claim $30,000.00 pursuant to their loss of use or enjoyment of the Antillana while it underwent repairs. When faced with a question similar to the one posed in this case, the First Circuit assumed that there is no mechanism by which owners of a pleasure vessel can recover damages for loss of use under admiralty law. *Sharp v. Hylas Yachts, LLC*, 2017 AMC 2169, 2176, 872 F.3d 31 (1st Cir. 2017). The First Circuit took its cues from the parties' implicit agreement and from a century-old Supreme Court case which still enjoys circuit support. In *The Conqueror*, the Court held that "[loss of profits] must be a pecuniary loss, or at least a reasonable certainty of pecuniary loss, and not a mere inconvenience arising from an inability to use the vessel for the purposes of pleasure" in order for the owner to recover damages. *The Conqueror*, 166 U.S. 110, 133, 2011 AMC 566, (1897). Other courts, applying admiralty law, have also precluded "damages for lost pleasure use of a pleasure vessel." *Sharp*, 2017 AMC at 2176; *see e.g.*, *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 2011 AMC 1748 (9th Cir. 2011) (allowing damages for loss of pleasure use only where plaintiff lived on his pleasure vessel); *Cent. State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F.3d 1373, 2000 AMC 1078 (11th Cir. 2000) (denying damages for loss of pleasure use where plaintiff could not prove any loss of profits with reasonable certainty); *Snavely v. Lang*, 592 F/2d 296, 1979 AMC 1011 (6th Cir. 1979) (denying

damages for mere loss of pleasure use without evidence of lost profits); *Thomson v. United States* 266 F.2d 852, 1959 AMC 1345 (4th Cir. 1959) (denying damages for loss of use of a pleasure vessel because valuation is "highly speculative and immeasurable"); *N. Assur. Co. of Am. v. Heard*, 755 F. Supp. 2d 295, 2011 AMC 258 (D. Mass. 2010) (denying loss of use damages for a purely recreational vessel and calling *The Conqueror* "a categorical rule").

Because maritime law expressly considers and rejects damages for loss of pleasure use of a pleasure vessel, maritime law should govern this claim. Plaintiffs allege loss of pleasure use in their Complaint, but they do not allege related loss of profits or support their damages claim with any reasonable certainty. *See* Compl. at ¶ 78(c). At no point do Plaintiffs allege that the Antillana served any purpose besides pleasure or that they suffered loss of profits during its repair. Plaintiffs conceded that maritime law does not permit damages for loss of pleasure use of a pleasure vessel, so this claim is precluded under maritime law. *See* Dkt. 11 at 4.

Furthermore, Plaintiffs' claim regarding lack of use and enjoyment damages omits any factual allegations that might support their claim of $30,000.00 in damages. Instead, their claim for loss of use damages resembles the "naked assertion" warned against in *Twombly* and *Iqbal*. *Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 678. For the claim to survive Defendants' motion, it would require not only additional facts making it plausible but also maritime law's silence on the matter. Neither is the case here. Accordingly, Defendants' motion to dismiss Plaintiffs' Article 1802 claim for loss of use of the Antillana should be granted.

## CONCLUSION

For the above reasons, I recommend that the motion to dismiss Plaintiffs's loss of use and loss of market value claims be **GRANTED.**

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific

and must be filed with the Clerk of Court **within 14 days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 24th day of January, 2019.


                                         *S/ Bruce J. McGiverin*
                                         BRUCE J. MCGIVERIN
                                         United States Magistrate Judge